1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
9                                AT SEATTLE

10   DONALD P. OSBORNE,                        CASE NO. C15-26 MJP

11                    Plaintiff,               ORDER ON MOTIONS FOR
                                               SUMMARY JUDGMENT
12         v.

13   BARBARA J. COSTER, et al.

14                    Defendants.

15

16         THIS MATTER comes before the Court on Defendants' motions for summary judgment,

17   (Dkt. Nos. 19, 21, 26).  Having reviewed the motions, Plaintiff's response, (Dkt. No. 29), and the

18   related record, the Court hereby GRANTS the motions.

19                              **Background**

20         On October 14, 2009, Elisabeth Hancock executed her last will and testament ("2009

21   Will").  (Dkt. No. 21 at 3.)  Plaintiff Donald Osborne drafted the 2009 Will.  (Id.)  Ms. Hancock

22   died thirteen days later, on October 27, 2009.  (Id.)  Plaintiff initiated probate and was appointed

23   Personal Representative ("PR") of the Hancock estate, as was provided for by the 2009 Will.

24   (Id.)

1   Sandra Hudson, Ms. Hancock's daughter, retained attorney Randolph Petgrave to

2   represent her interests in probate.  (Dkt. No. 22-1 at 22.)  On April 16, 2010, Mr. Petgrave met

3   with Plaintiff and learned that Plaintiff had both drafted the 2009 Will and named himself the

4   residual beneficiary of the will, among other things.  (Id. at 23.)  This meeting led to the

5   initiation of proceedings under Washington's Trust and Estate Dispute Resolution Act

6   ("TEDRA") to remove Plaintiff as the PR and beneficiary of the Hancock estate.  (Dkt. No. 21 at

7   3.)

8   On May 21, 2010, Commissioner Carlos Velategui of King County Superior Court

9   entered an order appointing Defendant Barbara Coster as successor PR of the Hancock estate.

10  (Dkt. No. 20 at 2.)  Commissioner Velategui also permanently revoked the Letters Testamentary

11  previously issued to Plaintiff and froze all estate assets.  (Id.)  Defendant Coster accepted the

12  appointment.  (Id.)

13  On July 14, 2010, Commissioner Velategui ordered Plaintiff to provide an accounting of

14  all estate assets and to deliver all of Ms. Hancock's personal papers and records to Defendant

15  Coster.  (Dkt. No. 22-1 at 16–18.)  On December 17, 2010, Commissioner Velategui entered

16  another order requiring Plaintiff to return all estate assets to Defendant Coster.  (Id. at 41.)

17  On February 7, 2011, Defendant Coster filed a petition for relief contesting the validity of

18  the 2009 Will, alleging that Plaintiff violated the Rules of Professional Conduct ("RPCs") and

19  that he had exerted undue influence on Ms. Hancock, among other things.  (Id. at 33–49.)  In

20  March of 2011, the state court entered Findings of Fact and Conclusions of Law on Defendant

21  Coster's petition.  (Id. at 51–59.)  In relevant part, the court found that Plaintiff violated the

22  RPCs when he drafted the 2009 Will in his favor, took possession of Ms. Hancock's property,

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 2

1   distributed assets to himself, and failed to immediately turn over all assets to Defendant Coster.

2   (Id.)

3        On May 5, 2011, Commissioner Velategui entered judgment against Plaintiff in the

4   amount of $112,478.20 to the benefit of the Hancock estate, reimbursing the estate for fees and

5   costs incurred as a result of Plaintiff's actions.  (Id. at 64–66.)  Plaintiff sought revision of the

6   order awarding judgment against him, and Judge Mariane Spearman confirmed the judgment on

7   July 27, 2011.  (Id. at 68–70.)  Because Plaintiff did not pay the judgment, Defendant Coster

8   hired Defendant Matthew Green, an attorney at the Williams, Kastner & Gibbs law firm

9   ("Williams Kastner"), to assist with collection of the judgment.  (Dkt. No. 28 at 2.)

10        On August 23, 2011, Defendant Green applied for and obtained a writ of execution

11   against Plaintiff from the state court.  (Id.)  Defendant Green's office then provided the writ to

12   the King County Sheriff's Office and requested that they serve and enforce the writ.  (Id.)  On

13   September 15, 2011, Defendants Hugo Esparza and M.P. Illingworth, deputies with the King

14   County Sheriff's Office, served the writ on Plaintiff.  (Id.)  Defendant Green and Defendant

15   Coster accompanied them.  (Id.)

16        Defendant Esparza gave Plaintiff a copy of the writ and explained the writ service

17   process to him.  (Dkt. No. 29-2 at 5); (Dkt. No. 23 at 4.)  He also explained to Plaintiff and

18   Brenda Osborne—Plaintiff's ex-wife who was visiting at the time—that if they wished to remain

19   at Plaintiff's residence while Defendants searched the residence, they would have to stay in the

20   kitchen area with Defendant Illingworth for safety reasons and to prevent the loss of any

21   property.  (Dkt. No. 23 at 5.)

22        While looking through the house, Defendant Coster found papers and files belonging to

23   the Hancock estate.  (Dkt. No. 20 at 6.)  Defendant Coster asked the deputies to seize these

24

1   papers and files.  (Id.)  Because the papers and files were not Plaintiff's property and, therefore,

2   not subject to the writ, Defendant Esparza contacted Senior Deputy Prosecutor John Cobb of the

3   King County Prosecutor's Office, Civil Division, in order to obtain legal advice.  (Dkt. No. 23 at

4   6.)  Prosecutor Cobb advised Defendant Esparza to seize the estate property and to keep custody

5   of it until a court could rule on what should happen with the property.  (Id.)

6        At some point during the search, Plaintiff left his residence to obtain and post a bond to

7   stay execution of the writ.  (Id.)  The parties dispute whether Defendant Illingworth followed

8   Plaintiff to the bank and to the courthouse.  (See e.g. Dkt. No. 24 at 3); (see also Dkt. No. 29-2 at

9   7.)  When Plaintiff returned from posting the bond, Defendant Esparza informed Plaintiff that he

10  was seizing the estate property.  (Dkt. No. 23 at 6); (Dkt. No. 29-2 at 8.)  Defendants then left

11  Plaintiff's residence.  (Dkt. No. 23 at 7.)

12       On September 19, 2011, Defendant Coster filed a petition with the state court for an order

13  directing the King County Sheriff's Office to release the seized estate property to her.  (Dkt. No.

14  22-1 at 83–86.)  Plaintiff opposed the petition, (Dkt. No. 20-4 at 37–44), arguing, among other

15  things, that Defendant Coster's participation in the execution of the writ was improper, that the

16  writ of execution process was radically abused by Defendants, and that Plaintiff's personal

17  property was unlawfully seized.  Over Plaintiff's objections, the court entered an order directing

18  return of the seized estate property to Defendant Coster.  (Id. at 62–64.)

19       The parties in the TEDRA action eventually reached a settlement pursuant to which

20  Plaintiff agreed to pay the May 2011 judgment and an additional sum to the Hancock estate.  (Id.

21  at 66–78.)  The parties executed a Non-Judicial Binding Agreement reflecting the terms of the

22  settlement that was approved by the state court on November 9, 2011.  (Id.)

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 4

1    In September of 2015, Plaintiff commenced this suit against Defendants.  (Dkt. No. 1-1.)

2    Plaintiff asserts a federal claim under Section 1983 and state law claims for wrongful execution

3    of writ, false imprisonment, intentional infliction of emotional distress, negligent infliction of

4    emotional distress, invasion of privacy, negligence, trespass to real property, trespass to chattels,

5    conversion, theft, abuse of process, and malicious prosecution against Defendants.  (Id.)

6    Defendants move for summary judgment on all of Plaintiff's claims.  (Dkt. Nos. 19, 21, 26.)

7    Plaintiff opposes the motions.  (Dkt. No. 29.)

8                                                  **Discussion**

9    **I.        Noting Date**

10         Plaintiff argues Defendants' motions for summary judgment were improperly noted for

11   the Court's consideration on July 10, 2015 and requests that the Court re-set the noting date.

12   (Dkt. No. 29 at 1–2.)  Plaintiff's argument is without merit.  Defendants filed their motions and

13   served them by mail on June 18, 2015.  (Dkt. Nos. 19, 21, 26.)  Under the Federal Rules of Civil

14   Procedure, service by mail is complete upon mailing.  Fed. R. Civ. P. 5(b)(2)(C).  The Local

15   Rules provide that motions for summary judgment "shall be noted for consideration on a date no

16   earlier than the fourth Friday after filing and service of the motion."   LCR 7(d)(3).  Therefore,

17   Defendants' motions for summary judgment were correctly noted for July 10, 2015.

18         Plaintiff argues he had three extra days to respond to Defendants' motions under Fed. R.

19   Civ. P 6(d).  (Dkt. No. 29 at 1–2.)  However, Plaintiff's deadline to respond is determined by the

20   Local Rules, not by Fed R. Civ. P. 6(d).  Moreover, even if Plaintiff were correct that Fed. R.

21   Civ. P. 6(d) applies, Plaintiff chose to file his response on July 6, 2015 and does not explain how

22   he was prejudiced by doing so. The Court declines to re-set the deadlines on Defendants'

23   motions for summary judgment.

24   //

1    **II.     Motions for Summary Judgment**

2         **A.  Legal Standard**

3         Summary judgment is not warranted if a material issue of fact exists for trial.  <u>Warren v.</u>

4    <u>City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1171 (1996).  The

5    underlying facts are viewed in the light most favorable to the party opposing the motion.

6    <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  "Summary

7    judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

8    the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The party

9    moving for summary judgment has the burden to show initially the absence of a genuine issue

10   concerning any material fact.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159 (1970).  Once the

11   moving party has met its initial burden, however, the burden shifts to the nonmoving party to

12   establish the existence of an issue of fact regarding an element essential to that party's case, and

13   on which that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

14   323-24 (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but

15   instead must have evidence showing that there is a genuine issue for trial.  <u>Id.</u> at 324.

16        **B.  Issue Preclusion**

17        Defendants argue Plaintiff's claims are barred by the doctrine of issue preclusion.  (Dkt.

18   No. 19 at 10–12); (Dkt. No. 21 at 7–21); and (Dkt. No. 26 at 6–7.)

19        Issue preclusion bars successive litigation of an issue of fact or law that was actually

20   litigated and resolved in a valid court determination essential to the prior judgment even if the

21   issue recurs in the context of a different claim.  <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008).

22   Federal courts "determine the preclusive effect of a state court judgment by applying that state's

23   preclusion principles."  <u>Readylink Healthcare, Inc. v. State Comp. Ins. Fund</u>, 754 F.3d 754, 760

24   (9th Cir. 2014).  Issue preclusion applies where there are: (1) identical issues; (2) a final

1    judgment on the merits; (3) the party against whom the plea is asserted must have been a party to

2    or in privity with a party to the prior adjudication; and (4) application of the doctrine must not

3    work an injustice on the party against whom the doctrine is to be applied.  See Shoemaker v. City

4    of Bremerton, 109 Wn.2d 504, 507 (1987); see also Hydranautics v. FilmTec Corp., 204 F.3d

5    880, 885 (9th Cir. 2000) (federal law same).

6           All of these elements are met here and Plaintiff is precluded from asserting all of his

7    claims in this litigation. Plaintiff was a party to the TEDRA proceedings and has already argued

8    to the state court that: (1) Defendants abused the writ of execution process; (2) Defendants

9    unlawfully restrained Plaintiff in his kitchen during the search; (2) Defendant Green's and

10   Defendant Coster's participation in the execution of the writ was improper; (3) Defendants

11   invaded Plaintiff's privacy; (4) Defendants utilized the writ of execution process in order to gain

12   access to Plaintiff's confidential files; (5) Defendants unlawfully seized Plaintiff's personal

13   property; and (6) Defendants' actions constituted an illegal search.  (Dkt. No. 20-4 at 37–45.)

14   Over Plaintiff's objections, the state court entered an order directing release of the seized estate

15   property to Defendant Coster.  (Id. at 62–64.)  The parties executed and the state court approved

16   a Non-Judicial Binding Agreement, (Id. at 66–78), which is a final judgment on the merits under

17   TEDRA.  See RCW 11.96A.230.  And, the application of the doctrine of issue preclusion will

18   not work an injustice against Plaintiff because Plaintiff has already had the opportunity to make

19   the same arguments he makes in this case to the state court.  Accordingly, the Court GRANTS

20   Defendants' motions for summary judgment as to all of Plaintiff's claims.

21          Although it finds the doctrine of issue preclusion bars all of Plaintiff's claims, the Court

22   nevertheless addresses Defendants' remaining arguments.

23   //

24

**C.  State Law Claims Against Defendants Illingworth and Esparza**

Defendant Esparza and Defendant Illingworth move for summary judgment on all of Plaintiff's state law claims on the grounds that Plaintiff did not file a claim for damages before filing this lawsuit.  (Dkt. No. 21 at 13.)

Washington law requires all tort claims for "damages against all local governmental entities and their officers, employees, or volunteers, acting in such capacity…" to be presented to a designated agent of that entity at least sixty days before a plaintiff may file a lawsuit.  RCW 4.96.020(1), (4).  "Filing a claim for damages within the time allowed by law shall be a condition precedent to the commencement of any action claiming damages."  RCW 4.96.010(1).

Plaintiff did not file a claim for damages before filing this lawsuit.  (Dkt. No. 25 at 2) ("Declaration of Anne Norris in Support of Defendants Esparza and Illingworth's Motion for Summary Judgment," ¶ 5) ("Today, I reviewed [] the claims database for the time period from 2011 up to the present, and found no claims for damages filed under the name or signature of Donald Osborne.")  Therefore, the Court DISMISSES Plaintiff's state law claims against Defendant Illingworth and Defendant Esparza.  Even if Plaintiff had complied with this procedural requirement, his state law claims against Defendants Illingworth and Esparza would be subject to dismissal at summary judgment for reasons stated below.  Therefore, the dismissal is with prejudice.  The Court addresses Plaintiff's Section 1983 claim against all Defendants infra, Section E.

**D.  Wrongful Execution of Writ**

Defendants argue the Court should grant summary judgment on Plaintiff's wrongful execution of writ claim under RCW 6.17.160 because the claim fails for lack of proof.  (Dkt. No. 19 at 14–15.)  Plaintiff argues Defendants utilized the writ for improper purposes, including

examining and seizing his confidential files.  (Dkt. No. 29 at 4–5.)  These arguments are

duplicative of the arguments Plaintiff makes in support of his Section 1983 and abuse of process

claims.  As discussed in greater detail <u>infra</u>, Sections E and M, no reasonable jury could find

Defendants executed the writ in an unreasonable manner or that Defendants utilized the writ for

an ulterior purpose.  Therefore, the Court GRANTS Defendants' motions for summary judgment

as to Plaintiff's wrongful execution of writ claim.

### E.  Section 1983

Defendants argue the Court should grant their motions for summary judgment as to

Plaintiff's Section 1983 claim because Plaintiff has not sufficiently alleged deprivation of a

constitutional right.  (Dkt. No. 19 at 15); (Dkt. No. 26 at 8–10.)  Plaintiff does not identify the

constitutional violation that is the basis for his Section 1983 claim in his complaint.  (Dkt. No. 1-

1 at 7.)  However, pro se pleadings are liberally construed.  <u>See</u> <u>Agyeman v. I.N.S.</u>, 296 F.3d

871, 878 (9th Cir. 2002).  The Court construes Plaintiff's complaint as alleging a Section 1983

claim based on a Fourth Amendment violation.

The Fourth Amendment protects the right of the people to be secure in their "persons,

houses, papers, and effects" against unreasonable searches and seizures.  <u>U.S. Const. amend. IV</u>.

The Fourth Amendment's protection against unreasonable search and seizure applies in the civil

context, but the standards of reasonableness are less stringent than in the criminal context.  <u>See</u>

<u>e.g.</u> <u>Owens v. Swan</u>, 962 F. Supp. 1436, 1440 (D. Utah 1997).

Viewing the facts in the light most favorable to Plaintiff, the Court finds no reasonable

jury could find Defendants' actions violated the Fourth Amendment.  Defendants had authority

to enter and search Plaintiff's residence pursuant to the writ of execution and state law.  (Dkt.

No. 20 at 5–6.)  The Court does not find that the presence of Defendant Coster and Defendant

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 9

1  Green made the search unreasonable.  Because Plaintiff had already been ordered to turn over all

2  estate property to Defendant Coster, seizure of the estate property was also reasonable.  (Dkt.

3  No. 22-1 at 16–18, 57.)  Likewise, the limited restrictions on Plaintiff's movement during the

4  search were reasonable safety precautions.  (Dkt. No. 24 at 2.)  As previously noted, the parties

5  dispute whether Defendant Illingworth followed Plaintiff to the bank and the courthouse.

6  However, these disputed facts are not material.  Because Plaintiff was able to leave his residence,

7  Defendants did not seize Plaintiff.  The Court GRANTS Defendants' motions for summary

8  judgment as to Plaintiff's Section 1983 claim.

9       Having found no constitutional violation, the Court does not reach Defendant

10  Illingworth's and Defendant Esparza's argument regarding qualified immunity.

11         **F.  False Imprisonment**

12       Defendants argue the Court should grant their motions for summary judgment as to

13  Plaintiff's false imprisonment claim because Plaintiff cannot provide evidence supporting any

14  element of this claim.  (Dkt. No. 26 at 11.)

15       Under Washington law, a plaintiff must prove the following to prevail on a claim of false

16  imprisonment: (1) intentional deprivation of movement or freedom to remain in the place of

17  one's lawful choice; and (2) such restraint or imprisonment may be accomplished by physical

18  force alone, by threat of force, or by conduct reasonably implying that force will be used.  See

19  Moore v. Pay'N Save Corp., 20 Wn. App. 482, 486 (1978).

20       Viewing the facts in the light most favorable to Plaintiff, the Court finds no reasonable

21  jury could find Defendants deprived Plaintiff of the freedom of movement or the freedom to

22  remain in a place of his lawful choice.  Defendants have submitted evidence that it was the

23  standard practice of the King County Sheriff's Office to ask the debtor and any third-parties

24

1   present to remain in a designated area during service of a writ of execution.  (Dkt. No. 24 at 2.)

2   The purpose of this procedure is to ensure the safety of all parties and to ensure that the debtor

3   does not hide items of personal property.  (Id.)  However, the debtor and/or third parties are at all

4   times free to leave the residence.  (Id.)  The Court has already found that these limitations on

5   Plaintiff's movement were reasonable.  And, while Plaintiff states in his declaration that he was

6   confined to the kitchen during the search of his residence, (Dkt. No. 29-2 at 7), he also states that

7   he was able to leave his residence in order to obtain and post a bond, (Id.).  The Court GRANTS

8   Defendants' motions for summary judgment as to Plaintiff's false imprisonment claim.

9               **G.  Intentional Infliction of Emotional Distress**

10          Defendants argue the Court should grant their motions for summary judgment as to

11   Plaintiff's intentional infliction of emotional distress claim because there is no evidence

12   supporting any of the elements of the claim.  (Dkt. No. 19 at 15–16); (Dkt. No. 26 at 11.)

13          The elements of an intentional infliction of emotional distress claim under Washington

14   law are: (1) that defendant engaged in extreme and outrageous conduct, (2) that intentionally or

15   recklessly inflicted emotional distress, and (3) that plaintiff suffered severe emotional distress as

16   a result of defendant's conduct.  Reid v. Pierce County, 136 Wash.2d 195, 202 (1998).  The

17   conduct in question must be "so outrageous in character, and so extreme in degree, as to go

18   beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

19   a civilized community."  Grimsby v. Samson, 85 Wn.2d 52, 59 (1975).  While whether certain

20   conduct is sufficiently outrageous is ordinarily a question for the jury, the Court must determine

21   in the first instance whether reasonable minds could differ as to whether the conduct alleged is

22   sufficiently outrageous.  Phillips v. Hardwick, 29 Wash. App. 382, 387 (1981).

23

24

1    Reasonable minds could not differ as to whether Defendants' conduct was sufficiently

2    outrageous to be actionable.  Viewing the facts in the light most favorable to Plaintiff, the Court

3    finds no reasonable jury could find Defendants' conduct was so outrageous in character as go

4    beyond all possible bounds of decency.  See e.g. Strong v. Terrell, 147 Wash. App. 376, 386

5    (2008) (summary judgment was proper where plaintiff alleged conduct of screaming and

6    ridiculing insults and indignities over two-year period); cf. Kloepfel v. Bokor, 149 Wn.2d 192,

7    194–95 (2003) (intentional infliction of emotional distress when, under a no-contact order,

8    defendant threatened to kill his former girlfriend, threatened to kill the man she was dating,

9    watched her house, called her home 640 times, called her work 100 times, and called the homes

10   of men she knew numerous times, forcing her to spend weekends away from home to avoid

11   defendant).   Nor does Plaintiff present any evidence that he suffered severe emotional distress as

12   a result of Defendants' conduct.  (See Dkt. No. 29.)  Accordingly, the Court GRANTS

13   Defendants' motions for summary judgment as to Plaintiff's intentional infliction of emotional

14   distress claim.

15         **H.  Negligent Infliction of Emotional Distress**

16        Defendants argue the Court should grant their motions for summary judgment as to

17   Plaintiff's negligent infliction of emotional distress claim because Plaintiff cannot show he

18   suffered objective physical symptoms from his emotional distress.  (Dkt. No. 19 at 16–17); (Dkt.

19   No. 26 at 11–12.)  In addition to the basic elements necessary to prove negligent infliction of

20   emotional distress under Washington law, the plaintiff must prove objective symptomatology.

21   See Kloepfel, 149 Wash. 2d at 199.  To satisfy the symptomatology requirement, "a plaintiff's

22   emotional distress must be susceptible to medical diagnosis and proved through medical

23   evidence."  Hegel v. McMahon, 136 Wash.2d 122, 135 (1998).  Because Plaintiff offers no

24

1    medical evidence supporting the claim, (see Dkt. No. 29), the Court GRANTS Defendants'

2    motions for summary judgment as to Plaintiff's negligent infliction of emotional distress claim.

3                **I.   Invasion of Privacy**

4          Defendants move for summary judgment on Plaintiff's invasion of privacy claim on the

5    grounds that Plaintiff cannot show Defendants' presence during the execution of the writ

6    constituted an unwarranted intrusion into Plaintiff's private activities, affairs, or seclusion.  (Dkt.

7    No. 19 at 17); (Dkt. No. 26 at 12.)

8          Under Washington law, "[o]ne who intentionally intrudes, physically or otherwise, upon

9    the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the

10   other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable

11   person."  Mark v. Seattle Times, 96 Wash.2d 473, 497 (1981) (quoting Restatement (Second) of

12   Torts § 652B at 378 (1977).)  The interference with a plaintiff's seclusion "must be a substantial

13   one resulting from conduct of a kind that would be offensive and objectionable to the ordinary

14   person."  Id.

15         Viewing the facts in the light most favorable to Plaintiff, the Court finds no reasonable

16   jury could find Defendants' actions during the execution of the writ would be highly offensive to

17   a reasonable person.  See Mark, 96 Wash.2d at 497 (collecting cases).  Because Defendants'

18   conduct did not rise to this level, the Court GRANTS Defendants' motions for summary

19   judgment as to Plaintiff's invasion of privacy claim.

20               **J.   Negligence**

21         Defendants move for summary judgment on Plaintiff's negligence claim arguing the

22   claim fails for the same reasons Plaintiff's wrongful execution of writ claim fails.  (Dkt. No. 19

23   at 18.) Plaintiff's negligence claim is duplicative of his wrongful execution of writ claim.  (Dkt.

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 13

1   No. 1-1 at 9) ("Defendant's owed Plaintiff a duty of care to legally comply with the requirements

2   for using a Writ of Execution.")  Because the Court has already found that no reasonable jury

3   could find Defendants executed the writ in an unreasonable manner or that Defendants utilized

4   the writ for an ulterior purpose, see supra, Section D, the Court GRANTS Defendants' motions

5   for summary judgment as to Plaintiff's negligence claim.

6             **K.  Trespass to Real Property**

7             Defendants move for summary judgment on Plaintiff's trespass to real property claim on

8   the grounds Defendants' actions (i.e. enforcing a judgment through a court-issued writ of

9   execution) cannot constitute trespass as a matter of law.  (Dkt. No. 26 at 13.)

10            An entry upon another person's land that might otherwise be wrongful does not constitute

11  trespass if it is a privileged entry.  See Brutsche v. City of Kent, 164 Wash.2d 664, 675 (2008)

12  (citing Restatement (Second) of Torts § 210 (1965).)  But "an actor who has in an unreasonable

13  manner exercised any privilege to enter land is subject to liability for any harm to a legally

14  protected interest caused by such unreasonable conduct."  Id. at 674 (citing Restatement

15  (Second) of Torts § 214 (1965).)

16            Viewing the facts in the light most favorable to Plaintiff, the Court finds no reasonable

17  jury could find Defendants' actions constituted trespass to real property.  Defendants were

18  authorized to enter Plaintiff's property pursuant to a court-issued writ.  (Dkt. No. 20 at 5–6.)

19  Further, the Court has already found that Defendants' actions during the execution of the writ

20  were reasonable.  There can be no actionable trespass where Defendants' entry was privileged

21  and Defendants acted reasonably.  Accordingly, the Court GRANTS Defendants' motions for

22  summary judgment as to Plaintiff's trespass to real property claim.

23  //

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 14

1          **L.  Theft, Trespass to Chattels, and Conversion**

2          Because Washington has no civil theft claim, the Court GRANTS Defendants' motions

3   for summary judgment as to Plaintiff's theft claim.

4          Defendants move for summary judgment on Plaintiff's trespass to chattels and

5   conversion claims on the grounds that Plaintiff cannot prove that Defendants interfered with or

6   deprived him of the use of any of his property.  (Dkt. No. 19 at 19); (Dkt. No. 26 at 13.)

7          "Conversion is the unjustified, willful interference with a chattel which deprives a person

8   entitled to the property of possession."  <u>In re Marriage of Langham & Kolde</u>, 153 Wash. 2d 553,

9   564 (2005) (citations and quotations omitted).  Trespass to chattels "is the intentional

10  interference with a party's personal property without justification that deprives the owner of

11  possession or use."  <u>Sexton v. Brown</u>, 147 Wn. App. 1005, 2008 WL 4616705, at *5 (2008)

12  (unpublished opinion) (citing Restatement (Second) of Torts § 217 (1965)).

13         Viewing the facts in the light most favorable to Plaintiff, the Court finds no reasonable

14  jury could find Defendants deprived Plaintiff of or otherwise interfered with Plaintiff's personal

15  property.  Defendants seized property belonging to the Hancock estate that the state court had

16  ordered Plaintiff to turn over to Defendant Coster.  (<u>See</u> Dkt. No. 20 at 6.)  In his declaration,

17  Plaintiff states "[t]here were other items seized as well," but does not identify the other items that

18  were seized.  (Dkt. No. 29-2 at 9.)  Plaintiff's conclusory assertion is insufficient to defeat

19  summary judgment.  <u>See</u> <u>Anheuser-Busch, Inc. v. Natural Beverage Distributors</u>, 69 F.3d 337,

20  345 (9th Cir. 1995).  The Court GRANTS Defendants' motions for summary judgment as to

21  Plaintiff's conversion and trespass to chattels claims.

22  //

23  //

24

1    **M. Abuse of Process**

2    Defendants move for summary judgment on Plaintiff's abuse of process claim on the

3    grounds that Plaintiff cannot show they had an ulterior purpose in obtaining and executing the

4    writ.  (Dkt. No. 19 at 19.)

5    "The two essential elements for abuse of process are (1) the existence of an ulterior

6    purpose-to accomplish an object not within the proper scope of the process-and (2) an act in the

7    use of legal process not proper in the regular prosecution of the proceedings." Fite v. Lee, 11

8    Wash. App. 21, 27 (1974).

9    Plaintiff argues Defendants utilized the writ to search his confidential documents and to

10    obtain evidence to use against him in the Hancock estate litigation.  (Dkt. No. 29 at 4–5.)

11    Plaintiff states in his declaration that "[n]either Coster nor Green was paying attention to any

12    items of personal (or real) property that actually could have been seized in satisfaction of a

13    judgment." (Dkt. No. 29-2 at 6.)  He also states "[d]espite going through every nook and cranny

14    of my residence and office for close to four hours, defendants found no assets which were

15    subject to execution." (Id. at 9.)  Plaintiff's arguments amount to speculation and are insufficient

16    to defeat summary judgment.  See Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081–82 (9th Cir.

17    1996). Because no reasonable jury could find Defendants obtained and executed the writ for an

18    ulterior purpose, the Court GRANTS Defendants' motions for summary judgment as to

19    Plaintiff's abuse of process claim.

20    **N.  Malicious Prosecution**

21    Defendants argue the Court should grant their motions for summary judgment as to

22    Plaintiff's malicious prosecution claim because probable cause supported the actions taken in the

23    TEDRA litigation.  (Dkt. No. 19 at 20.)

24

1    In Washington, a malicious prosecution claim arising from a civil action requires the

2 plaintiff to prove the five common law elements of malicious prosecution, among others: (1) that

3 the prosecution claimed to have been malicious was instituted or continued by the defendant; (2)

4 that there was want of probable cause for the institution or continuation of the prosecution; (3)

5 that the proceedings were instituted or continued through malice; (4) that the proceedings

6 terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff

7 suffered injury or damage as a result of the prosecution.  See Clark v. Baines, 150 Wash. 2d 905,

8 911 (2004).  Probable cause is an absolute defense to a malicious prosecution claim.  See Hanson

9 v. City of Snohomish, 121 Wash. 2d 552, 558 (1993).

10    Viewing the facts in the light most favorable to Plaintiff, the Court finds no reasonable

11 jury could find that Defendants' actions were not supported by probable cause.  Defendants'

12 actions (e.g. filing claims against Plaintiff, obtaining a judgment, pursuing collection efforts, and

13 seizing Hancock estate property) were based upon a reasonable belief that Plaintiff had

14 improperly taken and was withholding estate property.  See Restatement (Second) of Torts, §675

15 (1977) ("One who takes an active part in the initiation, continuation or procurement of civil

16 proceedings against another has probable cause for doing so if he reasonably believes in the

17 existence of the facts upon which the claim is based and [] (a) correctly or reasonably believes

18 that under those facts the claim may be valid under the applicable law . . .") Because probable

19 cause is an absolute defense to a malicious prosecution claim, the Court GRANTS Defendants'

20 motions for summary judgment as to Plaintiff's malicious prosecution claim.

21 //

22 //

23 //

24

**O.  Counterclaims**

Defendants Esparza, Illingworth, Green and Williams Kastner assert state law counterclaims against Plaintiff.  (Dkt. Nos. 7, 12.)  The Court has supplemental jurisdiction over these counterclaims.

A federal court may assume supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction so that they form part of the same case or controversy.  28 U.S.C. § 1367.  A federal court may decline to exercise this supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  Id.

The Court has granted Defendants' motions for summary judgment as to Plaintiff's Section 1983 claim—the sole claim over which the Court has original jurisdiction.  The Court declines to exercise supplemental jurisdiction over Defendants' state law counterclaims and DISMISSES them without prejudice.  However, it is not clear on this record whether Defendant Coster and Defendant Hertog & Coster, PLLC ("Coster Defendants") also assert counterclaims against Plaintiff.  The Court ORDERS the Coster Defendants to advise the Court in seven (7) days in writing whether they assert counterclaims against Plaintiff.

**Conclusion**

The Court GRANTS Defendants' motions for summary judgment, (Dkt. Nos. 19, 21, 26). The state law counterclaims asserted by Defendants Esparza, Illingworth, Green and Williams

1  Kastner are DISMISSED without prejudice.  The Coster Defendants are ORDERED to advise

2  the Court in seven (7) days in writing whether they assert counterclaims against Plaintiff.

3       The clerk is ordered to provide copies of this order to all counsel.

4       Dated this 18th day of August, 2015.

5

6

     Marsha J. Pechman
     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 19